**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 16, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JERRY L. LESTER,

    Defendant-Appellant.

No. 07-3194
(D.C. No. 06-CR-20151-01-JWL)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **EBEL**, and **GORSUCH**, Circuit Judges.

---

Defendant-Appellant Jerry Lester appeals the district court's decision to deny his motion to suppress both evidence found at his home pursuant to a search warrant as well as statements he made to the police. We conclude that probable cause supported the warrant and that Lester voluntarily made the statements to the police while he was not in custody. We have jurisdiction pursuant to 28 U.S.C.

---

[*] After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 1291, and accordingly, we AFFIRM the district court's decision to deny Lester's motion to suppress.

## I. Background

In March 2006, Agent Etnier with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") received information that Lester had corresponded via email with an individual in Germany regarding the sale of a firearm silencer in May 2005. Over the course of six emails between these two parties, Lester confirmed the silencer was still for sale, the amount charged for shipping to his address in Kansas, and the German seller's mailing address to which Lester could send the funds.

Based on these emails, Agent Etnier began investigating Lester for possession of an unregistered silencer. During this investigation, Agent Etnier determined that Lester had purchased several firearms from a pawn shop in July 2005 and February 2006. On the applications for those firearm purchases, Lester listed a mailing address in Waverly, Kansas, which matched the address on his driver's license. The pawn shop's records, however, indicated that Lester's address was in Ottawa, Kansas, and the post office informed Agent Etnier that Lester received mail in Ottawa, but not in Waverly. Agent Etnier also contacted the current tenant of the address in Waverly as well as the owner of that property. Both told Agent Etnier that Lester had not lived at the property since at least October 2005. Based on this information, Agent Etnier expanded the scope of his

investigation to include the possibility that Lester made false statements when he filled out the ATF forms related to the firearm purchase in February 2006.

Based on this quantum of information, on May 9, 2006, Agent Etnier applied for a search warrant for Lester's residence and place of business in Ottawa. Etnier's affidavit included the information detailed above as well as the fact that other ATF agents had successfully purchased a firearm silencer from the German individual. Etnier also noted in his affidavit that individuals that acquire firearms and firearm silencers typically keep those items for long periods of time. Based on the information Agent Etnier submitted, the magistrate issued search warrants for Lester's residence and place of business.

On May 11, 2006, law enforcement officials contacted Lester at his place of business and informed him of the search warrants. When the officers told Lester of their plans to search his house, he asked to accompany them to his home so that he could secure his large dogs before the search began. While traveling to his house, Lester told the law enforcement agents that he was a regular user of marijuana and that he had both marijuana and drug paraphernalia at his house. This information suggested to the officers that Lester illegally possessed firearms, see 18 U.S.C. § 922(g)(3),[1] and that he had likely failed to disclose this information when he purchased the firearms from the pawnshop. During the

---

[1] 18 U.S.C. § 922(g)(3) prohibits any person "who is an unlawful user of or addicted to any controlled substance" from possessing a firearm.

search of the residence, the officers seized computer equipment as well as six firearms, over 10,000 rounds of ammunition, and drug paraphernalia. The officers did not discover a firearm silencer.

Prior to trial, Lester filed a motion to suppress both the evidence discovered at his house and his statements. After severing two overly broad portions of the warrant pursuant to United States v. Sells, 463 F.3d 1148 (10th Cir. 2006), the district court determined that the remaining portions of the warrant were not overly broad and that the search itself was valid pursuant to both the good faith doctrine and the plain view doctrine. The district court also concluded that Lester's Fifth and Fourteenth Amendment rights were not violated because he was not in custody at the time he made the statements and he voluntarily made his statements to law enforcement. The district court therefore denied the motion to suppress, and Lester now appeals that decision.

## II. Discussion

"In reviewing a district court's ruling on a motion to suppress, this court accepts the district court's factual findings unless clearly erroneous and views the evidence in the light most favorable to the prevailing party." United States v. Jones, 523 F.3d 1235, 1239 (10th Cir. 2008) (internal quotation marks omitted). We review de novo whether the search violated the Fourth Amendment, whether Miranda v. Arizona, 384 U.S. 436 (1966), required the officers to give Lester a warning before he made his statements, and whether Lester voluntarily made his

statements.  United States v. Grimmett, 439 F.3d 1263, 1268 (10th Cir. 2006)

(Fourth Amendment); Jones, 523 F.3d at 1239 (Miranda warnings); United States

v. Roman-Zarate, 115 F.3d 778, 783 (10th Cir. 1997) (voluntariness of

statements).  We first address the search and then turn to the statements.

"If the search and seizure was done pursuant to a warrant, we review the

issuing judge's finding of probable cause with great deference: we look to ensure

that the judge had a substantial basis for concluding that the affidavit in support

of the warrant established probable cause."  Grimmett, 439 F.3d at 1268 (internal

quotation marks omitted).  In turn, probable cause exists if "given all the

circumstances set forth in the affidavit . . . there is a fair probability that

contraband or evidence of a crime will be found in a particular place."  Sells, 463

F.3d at 1154.

Lester argues that probable cause did not support the portion of the warrant

authorizing the search for the silencer or silencer parts because the email

exchange was approximately a year old and therefore, the information was stale.[2]

Lester also contends that probable cause did not support the portion of the warrant

authorizing the search for indicia of control of the premises.  We find neither of

these arguments convincing, and conclude that the district court properly denied

---

[2] Lester does not contend that the district court wrongly applied the severance doctrine.  We therefore address only the warrant as severed by the district court.

Lester's motion to suppress the evidence seized at his residence because probable cause supported the warrant.[3]

"Probable cause for a search warrant cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." United States v. Harris, 369 F.3d 1157, 1165 (10th Cir. 2004) (internal quotation marks omitted). Information is not stale, however, merely due to the number of days elapsed. Id. "Instead, whether the information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." Id. (internal quotation marks omitted). "Where the offense in question is ongoing and continuing, the passage of time is not of critical importance." United States v. Mathis, 357 F.3d 1200, 1207 (10th Cir. 2004).

In the instant case, although the email exchange was approximately a year old, the information was not stale due to the nature of the criminal conduct. First, possession of unregistered firearms is a continuing offense. See 26 U.S.C. §§ 5845(a)(7) & 5861(d); see also United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995) (noting that federal firearms violations were "continuing offenses" because they "punish[] the possession and not merely the acquisition of a firearm"

---

[3] While the district court addressed the good faith doctrine rather than the Fourth Amendment's requirement of probable cause, we may affirm the district court's decision on any basis supported by the record. See, e.g., Ross v. U.S. Marshall for E. Dist. of Okla., 168 F.3d 1190, 1194 n.2 (10th Cir. 1999).

(internal quotation marks omitted)). Second, the affidavit stated that firearm silencers are not "fluid commodities," and that owners typically keep silencers for an extended period of time. Thus, both of these factors suggest that in the instant case, the "passage of time is not of critical importance," and thus, the information included in the email exchange was not stale. Mathis, 357 F.3d at 1207; see also Maxim, 55 F.3d at 397 (concluding that the same two factors dictated that three-year-old information regarding illegal firearm possession was not stale); United States v. Batchelder, 824 F.2d 563, 564 (7th Cir. 1987) (relying on similar statements regarding firearm possession in an affidavit to conclude that nine-month-old information was not stale).

In light of our determination that the emails were not stale, we conclude that the email exchange alone provided sufficient information to support a finding of probable cause. The emails swapped specific information about the silencer, the amount for shipping, and the address for payment. In addition, Lester specifically stated that he would send the necessary funds for the purchase and shipping upon receiving the mailing address in Germany. Thus, the magistrate had a sufficient basis to conclude that there was a "fair probability that contraband or evidence of a crime [would] be found" at Lester's residence. Sells, 463 F.3d at 1154.

We reach a similar conclusion regarding the provision of the warrant permitting the search for and seizure of indicia of control of Lester's residence.

The affidavit asserted that in February 2006 when Lester filled out the ATF forms in question he listed an address in Waverly. The affidavit also asserted (i) that both the tenant and the landlord of the property in Waverly told Agent Etnier that Lester had not lived at that address in February 2006 and (ii) that at approximately the same time, Lester received mail at two addresses in Ottawa. This information presented the magistrate with a sufficient basis to conclude that Lester had violated 18 U.S.C. § 922(a)(6) by providing erroneous information on the ATF forms and that evidence of that crime would be found at Lester's residence. Accordingly, probable cause also supported this aspect of the warrant, and therefore, the district court properly denied Lester's motion to suppress the evidence discovered at his residence.

We turn now to Lester's statements. Lester contends that the district court should have suppressed his statements because the law enforcement officers failed to give him the necessary <u>Miranda</u> warnings and because his statements were involuntary. We disagree. Lester offered to accompany the officers to his residence and voluntarily told the officers about his marijuana habit. Accordingly, the district court correctly denied Lester's motion to suppress his statements.

It is well established that <u>Miranda</u> warnings are required only when law enforcement conducts a "custodial interrogation." <u>See, e.g.</u>, <u>Jones</u>, 523 F.3d at 1239. "Thus, <u>Miranda</u> rights need only be given to a suspect at the moment that

the suspect is in custody and the questioning meets the legal definition of interrogation." Id. A suspect is "in custody" only when his freedom is "curtailed to a degree associated with formal arrest." Id. (internal quotation marks omitted). Therefore, using an objective analysis, we must "determine whether a reasonable person in the suspect's situation would have understood the situation as the functional equivalent of formal arrest." Id. (internal quotation marks omitted).

In the instant case, there is little doubt that Lester was not in custody at the time he made his statements to the law enforcement officers. He voluntarily asked to accompany the officers to his house so he could secure his dogs. Before traveling to Lester's residence, the officers informed Lester that he was not under arrest. Once they arrived at Lester's residence, Agent Stukey again informed Lester that he was not under arrest and that he was free to leave at any time. In light of the consistent admonitions from the officers, a reasonable person would have concluded that his freedom was not sufficiently curtailed such that the situation constituted the functional equivalent of an arrest. Therefore, Lester was not in custody and the Miranda warnings were not required.

Lester's involuntariness argument fairs no better. To determine if statements were voluntarily made, we look to a number of factors, including: (i) "the age, education, and intelligence of the suspect"; (ii) "the length of [the] detention and the questioning"; and (iii) "the use of physical punishment." United States v. Chalan, 812 F.2d 1302, 1307 (10th Cir. 1987). Although no

single factor is determinative, see id., in the case at bar, no factor militates in favor of a conclusion that Lester's statements were involuntary. Nothing in the record suggests that Lester's age, education, or intelligence made him susceptible to coercion by the law enforcement officers. In addition, the record indicates that the length of questioning was not extensive. In fact, although the officers spoke with Lester during the drive to his house and while the search took place, the officers ended their discussions upon Lester's request. Finally, nothing in the record indicates that the officers used any physical force to coerce his statements. Accordingly, in spite of Lester's arguments to the contrary, we conclude that his statements were voluntary, and therefore, the district court properly denied Lester's motion to suppress his statements.

## III. Conclusion

For the reasons stated above, we conclude that the district court properly denied Lester's motion to suppress both the evidence discovered at his residence as well as the statements he made to the law enforcement officers. We therefore AFFIRM the district court's decision to deny Lester's motion to suppress.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge


- 10 -